

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| WELLS FARGO BANK TEXAS, N.A. § <br> Plaintiff, § <br> § <br> vs. § <br> § <br> SWANBERG FARMS, A Partnership, § <br> DERRICK R. SWANBERG, § <br> HOLLIS C. SWANBERG, § <br> SHERI MARIE SWANBERG, § <br> ALAZAN GIN CO., § <br> JOHNSTON COTTON CO., INC. § <br> T.J. BEALL COMPANY, § <br> HOHENBERG BROS. COMPANY AND § <br> LISA J. NICHOLS, AS TRUSTEE FOR § <br> THE BANKRUPTCY ESTATE OF § <br> GEO. D. BENNETT & CO., INC. § | | C.A.B.-04-083 |

**PLAINTIFF, WELLS FARGO BANK TEXAS, N.A.'S, SUPPLEMENTAL BRIEF REGARDING CONVERSION UNDER THE SELLING AGENT THEORY**

TO THE HONORABLE JUDGE ANDREW HANEN:

COMES NOW WELLS FARGO BANK TEXAS, N.A., Plaintiff in the above styled and numbered cause and pursuant to the Court's Order files this Supplemental Brief regarding its conversion claim against Defendant Alazan under the selling agent theory and would respectfully show the following:

**I.
STATEMENT OF FACTS**

1. Plaintiff hereby adopts the Statement of Facts, Affidavits, and Exhibits used in its Motion for Partial Summary Judgment Against Defendant Alazan under the theory of selling agent.

1

## II.
## **ARGUMENT AND AUTHORITY**

### A. Statutory Construction

2. This case involves, in part, a conversion claim brought under the Federal Food Security Act of 1985 as codified in 7 U.S.C.S. 1631. A true and correct copy of 1998 version of 7 U.S.C.S. 1631 is attached hereto as Exhibit "A" and incorporated herein by reference for all purposes.

3. In determining the scope of an applicable statute, the Court must first view the expressed legislative intent. See Bailey Vaught Robertson & Co. v. United States, 828 F.Supp. 442, 445 (N.D. Tex. 1993). Here, the statute states that its purpose is to remove burden on and obstruction to interstate commerce in farm products, which is created by state law when a purchaser of farm products has no practical method of discovering a security interest on the farm product. See 7 U.S.C.S. 1631 (a) & (b) (Lexis, 1998).

4. The statute accomplishes its goal by imposing specific obligations on secured parties in order to preserve their interests in farm product. See 7 U.S.C.S. 1631 (e) & (g) (Lexis, 1998). This statute very clearly states that any buyer, selling agent, or commission merchant will be subject to a security interest, if the secured party complies with the notice requirements. Id.

5. If any ambiguity were to exist on the implementation of this statute, then the general principles of statutory construction require an interpretation that gives some force or effect to the terms of the statute which would cure and remedy the intent of the legislatures. See generally Marshall v. Huffhines Steel Co., 488 F. Supp. 995, 987-988

2

(N.D. Tex. 1979). The logic being that Congress would not intend to enact meaningless or futile legislation. See Almendarez v. Barrett-Fisher Co., 726 F.2d 1275, 1280 (5th Cir. Tex. 1985). Defendant Alazan has raised the argument that Wells Fargo waived its security interest by giving it notice under 7 U.S.C.S. 1631. Defendant Alazan claims that following the requirements of 7 U.S.C.S. 1631 imputes knowledge on Plaintiff that its collateral would be sold. Following this line of argument would render the provisions of 7 U.S.C.S. 1631 meaningless. Congress' intent was to alleviate the burden on interstate commerce. In doing so, it established notice requirements to be fulfilled by secured parties desiring to preserve its security interest. Section 7 U.S.C.S. 1631(g), states that

> (2) a commission merchant or selling agent who sells a farm product for others shall be subject to a security interest created by the seller in the farm product if –
> (a) within 1 year before the sale of such farm product the commission merchant or selling agent has received from the secured party written notice of the security interest; organized according to farm products, that ...

Thus, to argue that by giving this statutory notice somehow extinguishes the security interest is contrary to the language of the statute making it clear that a selling agent with notice shall be subject to a security interest.

6. "Courts must be careful not to substitute their judgment for that of Congress, add restrictions not contained in the statute, or rewrite clear statutory language." See Robertson, 828 F.Supp. 442, 445 (citing Commissioner v. Mercantile National Bank of Dallas, 276 F.2d 58, 62-63 (5th Cir. 1960)). In enacting 7 U.S.C.S. 1631, Congress intended that a security interest prevail if the initial buyer, commission merchant, or selling agent received notice from a secured party.

3

### B. Substantial Compliance with Notice Requirement

7. The Federal Food Security Act 7 U.S.C.S. 1631(g) provides that a security interest in farm products can be divested through the ordinary course of business unless the secured party meets certain notice requirements. In particular, section 1631(g) 2 (A) provides that:

> within 1 year before the sale of such farm product the commission merchant or selling agent has **received from the secured party** or the seller **written notice** of the security interest; organized according to farm products, that —
>
> (g)2(A)(i)    is an original or reproduced copy thereof;
> (g)2(A) (ii)   **contains**,
>     (I)    the name and address of secured party
>     (II)   the name and address of the person indebted to the secured party;
>     (III)  the social security number of the debtor or, in the case of a debtor doing business other than as an individual, the IRS taxpayer identification number of such debtor,
>     (IV)  a description of the farm products subject to the security interest created by the debtor, including the amount of such products, where applicable, crop year, county, or parish, and a reasonable description of the property; and ...

8. Plaintiff complied with the applicable provisions of the Federal Food Security Act and it is entitled to the protections and benefits intended by the Act. The notice sent to and received by Defendant Alazan substantially complied with the requirements set out by 7 U.S.C.S. 1631(g) 2(A). A true and correct copy of the notice was supplied with Plaintiff's Motion for Partial Summary Judgment as attached to the Cisneros Affidavit as Exhibit "E."

9. This notice dated February 17, 1998, was given within a year before the sale of the cotton (the sale took place September 16-17, 1998). The original notice was sent to

Alazan with the name and address of the debtor and secured party together with a list of the farm products and location of where the crop would be grown. Further, Plaintiff set out the payment obligations imposed as conditions for waiver or release of security interest. This substantially meets the requirements set out on section 1631(g) 2 (A).

10. Defendant Alazan argues that Plaintiff's notice fails because it did not include social security number or taxpayer IRS number of the debtor. The notice given to Defendant Alazan, even without the taxpayer identification number, is legally sufficient to protect Plaintiff's security interest. According to applicable case law, a secured party need only **substantially comply** with the notice requirements (Emphasis supplied.) See First Nat'l Bank & Trust v. Miami County Coop Ass'n, 257 Kan. 989, 897 P.2d 144, 1995 Kan. Lexis 89 (1995). In First Nat'l, the initial buyer received notices from the Bank claiming a security interest in grain sold to the Coop by the farmer. The notice failed to describe the real property and county where the crops were located or grown; certain notices failed to specify a particular crop year; and none of the notices specified the amount of collateral subject to the Bank's security interest. Id at 149. There the Court applied the rules of statutory construction to determine whether Congress intended that the direct notice be strictly complied or substantially complied with the Act's provisions. The Court held that the Bank needed only to substantially comply with the Act's provisions. Id at 152. The Court reasoned that Congress did not intend that a party who received direct notice containing minor omissions and errors which are not misleading could avoid a security interest merely because there was no strict compliance with the Act. Id Just as in First Nat'l, Defendant Alazan received notice which substantially complies with Congress intend

that buyers, selling agents, or commission merchants receive notice of a lender's security interest in the farm products. There is no dispute that actual notice was received by Defendant Alazan. The argument that one minor omission, the taxpayer number, would divest the security interest is contrary to Congressional intent, case law, and simply absurd. This omission does not in anyway mislead Defendant Alazan about the security interest. Accordingly, Plaintiff's notice is legally sufficient to impose the payment obligations contained therein upon Defendant Alazan. Defendant Alazan knowingly transferred the cotton in violation of Plaintiff's perfected security interest. Thus, Defendant Alazan is liable for conversion.

### C.  Defendant Alazan Was the Swanberg's Selling Agent

11. As discussed in the preceding paragraph, Congress intended that a security interest prevail if the initial buyer, commission merchant or selling agent received actual notice of the security interest that substantially complied with the Act's provisions. For the present purposes, the key definitional term is "selling agent." The Act defines selling agent as any person engaged in the business of negotiating the sale and purchase of any farm product on behalf of a person engaged in farming operations. See 7 U.S.C.S. §1631(c) (Lexis, 1998). The facts of the instant case clearly show that Defendant Alazan was acting as Defendant Swanberg's selling agent. For years, Defendant Alazan took care, custody, and control of the Swanberg cotton for ginning and selling purposes. In particular Defendant Alazan regularly did the following:

    A.)    took two samples of the bale and had them tested for grade;

    B.)    gave one of the samples to a potential buyer and another to USDA to grade

the bale;

C.) arrange the bales to be transported to a warehouse for storage;

D.) prepared recap sheets with information on weight and grade of all bales;

E.) distributed recaps sheets to potential buyers;

F.) sought quotes from potential buyers;

G.) concluded the sale by transferring warehouse receipts;

H.) collected proceeds from the sale; and

I.) disbursed proceeds from the sale to farmer and its creditors.

*See* Deposition of Francisca Rodriguez Page 20, Lines; Page 20, Lines 14-16; Page 25, Lines 16-19 *and* Deposition of Hollis Swanberg Page 28, Lines 1-16 *and* Deposition of Gary White Page 21, Lines 8-1 attached to the Ray Affidavit as in the Motion for Partial Summary Judgment.

12. At all relevant times, Defendant Alazan kept control of the cotton by keeping the warehouse receipts. *See* Deposition of Hollis Swanberg Page 19, Lines 21-24. In fact in this case, Defendant Alazan was the only one that could finalize the sale by transferring the cotton, because it listed itself as the holder of the receipts in an electronic warehouse receipt system with limited access. *See* Deposition of Robert Fields, Page 22, Lines 4-9. The prior course of dealing and actions in this situation establishes as a matter of law that Alazan was the Swanberg's selling agent.

13. Defendant Alazan presents the argument that it was a bailee, not the Swanberg's selling agent. This argument fails because their actions as described above go beyond what a bailee does for its bailor. First, a bailment relationship involves the

transfer of personal property from one person to another, without the transfer of ownership of the property. See In Re Stage Stores, Inc., 269 B.R. 343, 2001 US Dist. Lexis 18795 (S.D. Tex. 2001). In the present case, it is undisputed that Defendant Alazan took title to the receipts issued for the underlying Swanberg cotton. The concept of bailment makes it clear that possession in one person and title in another is the essence of a bailment.

14. Next, the facts are clear that Defendant Alazan was actively trying to negotiate a sale by compiling information necessary to market the cotton. Further, Defendant Alazan actually sought quotes from potential buyers. And finally, it was the only one that could facilitate the sale by transferring the receipts that were held in its name alone.

15. Defendant Alazan would have the Court ignore all these actions and rule it was not a selling agent on the mere fact that it did not negotiate the actual price with one of several potential buyers. Adopting Defendant Alazan's argument would allow them to disregard Plaintiff's notice and circumvent a security interest by having the farmer finalize the contact with buyer. Such interpretation would not serve the legislative intent of the Federal Food Security Act and render unjust results. One cannot violate a security interest and avoid responsibility for doing so by claiming the owner authorized the sale. See First National Bank of Amarillo v. Southwestern Livestock, Inc., 616 F.Supp. 1515, 1520-1522. The testimony of Defendant Alazan's employees establishes that it acted as a selling agent and clearly had actual notice of Plaintiff's security interest. Therefore, even if Defendants Swanberg had authorized the sale of the cotton, Plaintiff is entitled to judgment as a matter of law because it did not authorize the sale and Defendant Alazan did not meet the payment obligations imposed by statute and Plaintiff.

### D. Defendant Alazan Knowingly Violated a Security Interest

16. As established Defendant Alazan had actual notice of Plaintiff's security interest. By virtue of the statute, a selling agent has the <u>duty to make payment obligations</u> that a <u>secured party has imposed</u> as conditions for waiver or release of the security interest (Emphasis supplied). See <u>7 U.S.C.S. 1631 (g)(2) (A) (v)</u>, (Lexis Nexis, 1998). As stated in its notice of security interest, Plaintiff imposed upon Defendant Alazan the obligation to make a joint check to Plaintiff and Swanberg as a condition for release of security interest. Defendant Alazan knowingly transferred the cotton without obtaining or issuing such a joint check.

17. If the selling agent does not fulfill the payment obligations, it takes the collateral subject to the security interest. See <u>7 U.S.C.S. 1631 (g) 2</u> and <u>In the Matter of McDonald vs. Ocilla Cotton Warehouse, Inc. and Shekinah Cotton, Inc.</u>, 224 B.R. 862, 868 (holding that a selling agent is subject to a bank's security interest when it received notice eight months before sale). Moreover, one who violates a valid security interest of a financial institution by not accounting to that financial institution for its security interest is subject to liability for conversion fo the institution's funds. See <u>First Bank vs. Eastern Livestock Co.</u>, 837 F. Supp. 792, 794 (S.D. Miss. 1993). Defendant Alazan transferred the cotton, despite having actual notice of Plaintiff's lien and in violation of the written notice outlining the payment obligations set out by Plaintiff for release of its security interest. Given that Defendant Alazan did not fulfill the payment obligations, it is liable for conversion.

### PRAYER

**WHEREFORE PREMISES CONSIDERED**, Plaintiff requests that this matter be

heard and that on the completion of the hearing the Court grant Plaintiff's Motion for Summary Judgment, and that Plaintiff have the following:

1. Judgment against Defendant Alazan for the fair market value of the cotton collateral.

2. Prejudgment interest as provided by law.

3. Postjudgment interest as provided by law.

4. Attorney's fees and costs of suit.

5. Such other and further relief to which plaintiff may be justly entitled.

                          Respectfully submitted,

                          **RANSOME & RAY, P.C.**
                          550 E. Levee Street
                          Brownsville, Texas 78520
                          Telephone: (956) 542-3642
                          Fax: (956) 542-3698

                          By: _____
                          Marshall R. Ray
                          State Bar No. 16606100
                          Fed Id. 2265
                          Elizabeth Guerrero Christ
                          State Bar No. 24032376
                          Fed Id. 31185
**ATTORNEYS FOR PLAINTIFF,**
**WELLS FARGO BANK TEXAS, N.A.**

## CERTIFICATE OF SERVICE

I, Elizabeth Guerrero Christ, hereby certify that on May 17th, 2004, a true and correct copy of the foregoing *Plaintiff's Supplemental Brief Regarding Conversion Under Selling Agent Theory,* was sent by regular mail to the following:

| | |
|---|---|
| Rex Leach<br>ATLAS & HALL, L.L.P.<br>P.O. Box 3725<br>McAllen, Texas 78502 | Via CM/RRR#70030500000109833227 |
| Harlin Womble<br>Jordan, Hyden, Womble & Culbreth<br>500 North Shoreline Blvd., Suite 900<br>Corpus Christi, Texas 78471 | Via CM/RRR#70023150000209700659 |
| Jerry Stapleton<br>Stapleton, Curtis & Boswell<br>P.O. Box 2644<br>Harlingen, Texas 78502 | Via CM/RRR#70030500000109833241 |
| Lisa J. Nichols, Trustee<br>10637 Leopard Street<br>Corpus Christi, Texas 78410 | Via CM/RRR#70030500000109833258 |
| John Kurt Stephen<br>Cardenas, Whitis, & Stephen<br>100 S. Bicentennial Blvd.<br>McAllen, Texas 78501 | Via CM/RRR#70023150000209700635 |
| Brendan Hall<br>P.O. Box 2725<br>Harlingen, Texas 78551 | Via CM/RRR#70023150000209700642 |

_____
Elizabeth Guerrero Christ

11