

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 2 8 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| SWANBERG FARMS | § | C.A. B-04-083 |
| | § | |
| VS. | § | (Adversary |
| | § | No. 02-07012) |
| CHUCK CROWLEY, d/b/a | § | |
| GEORGE D. BENNETT & CO., INC. | § | A JURY IS DEMANDED |

**ALAZAN GIN COMPANY'S REPLY TO WELLS FARGO BANK TEXAS, N.A.'S
SUPPLEMENTAL BRIEF
<u>REGARDING "SELLER'S AGENT" OR "SELLING AGENT" "THEORY"</u>**

TO THE UNITED STATES DISTRICT JUDGE:

ALAZAN GIN COMPANY, a Defendant in the above referenced adversary proceeding (herein "Alazan"), files this Reply to Wells Fargo Bank Texas, N.A.'s ("Wells Fargo") Supplemental Brief concerning the claim of Wells Fargo that Alazan was a "seller's agent" or "selling agent" for the warehouse receipts it held as bailee under an accommodation oral agreement with Swanberg Farms and that the notices required in the Food Security Act were substantially complied with, as follows:

**I.
PRELIMINARY STATEMENT**

1. In the most disingenuous discussion of the "seller's agent" "theory" postulated by Wells Fargo to date (which does not appear in any pleading in this case) Wells Fargo simply misinforms the Court on the following:

  a. the "Legislative Intent" of (and found in) the Food Security Act § 1631(a) controlling the interpretation of the notice requirements; and

  b. an implication that the mandatory "notice" provisions of the Food Security Act are one and the same for a "buyer" or "purchaser" of farm products [as found in and

described in §1631(e) of the act] as for a "selling agent" [as found in and described in §1631(g) of the act]; and

    c.    a suggestion that, with respect to the Food Security Act notices, "strict compliance" with the statue is not the rule and that Wells Fargo need only have "substantially complied" with, and has "substantially complied" with the Food Security Act notice requirements; and

    d.    a suggestion that Alazan is arguing to this Court that the "giving (of a Food Security Act Notice) extinguishes the security interest" of Wells Fargo.

2.    These simple misconstructions are now argued because Wells Fargo never plead "selling agent" – Wells Fargo never sent a "selling agent's notice" letter – Wells Fargo never complied with the notice requirements for either a purchaser or selling agent; -- and Wells Fargo needs to turn upside down the legislative intent expressly stated in the statute.

## II.
## REPLY ARGUMENTS AND AUTHORITIES

3.    The Wells Fargo Supplement Brief and its arguments pre-suppose that Wells Fargo plead "seller's agent" – it did not; and pre-supposes that Alazan was a seller's agent of Swanberg Farms – it was not. Without waiving Alazan's objection to trial of this claim by implied consent, Alazan responds as follows:

**A.    The Food Security Act Notice Requirements**

    **(i)    The Legislative Intent of the statute.**

4.    The legislative intent of the statute is not hard to find. The first section of the Act contains the "Congressional findings" [§1631(a) (1-3)] which expressly are that the Act is not for the protection of lenders and liens, but for "the protection for purchasers of farm products". Congress finds that it is bad public policy for lenders' claims to "subject the purchaser of farm

products to double payment for the product . . . (and) the exposure of purchasers of farm products to double payment inhibits free competition in the market for farm products . . . and an obstruction to interstate commerce in farm products." *Id.* Thus, a lender has the burden to specifically carve out an exception to avoid the enforcement of the Act pursuant to the Legislative Intent.

### (ii) Timely and Properly Giving Notices:

5. The Food Security Act also specifically provides that a buyer shall take free of a security interest created by the seller "even though the security interest is perfected; ***and the buyer knows of the existence of such interest.***" 7 U.S.C. § 1631(d). [Emphasis added.] Thus, addressing the absurd argument (invented by Wells Fargo only so that they could knock it down) that Alazan argues that "giving notice extinguished the security interest" [*See*, pg. 3, Wells Fargo Supplemental Brief], the law is clear that unless the notice is properly and timely given to the right person, the lien is unenforceable against buyers, selling agents or commission merchants. Giving notice preserves the lien in the only way the law allows – it is the failure to give the notice that extinguishes the lien.

### (iii) Substantial Compliance With Notice Provisions

6. Without mentioning this legislative finding in the statute, Wells Fargo suggests that Congress has manifested an intent to require only "substantial compliance" with the notice provisions of the statute; that a lender is not required to strictly comply.

7. It is not disputed that, as Wells Fargo pleads, the *Buyer's Notice Letter* [TAB 3 to Alazan's MSJ] complied only with the "purchaser" notice provisions of 7 U.S.C. § 1631(e), and is directed to Alazan *as a potential purchaser*, not as a "selling agent:"

> "You are further notified that, ***should you purchase any of the said farm products of such producer***, you shall take such farm products subject to the

security interest created by him in the farm produces.  Should the said producer fail to account to us for the proceeds of the sale of these farm products and fail to perform the payment obligations, then you shall be liable to Mercantile Bank, N.A. for conversion of such farm products.  *Id.* pg. 1, TAB 3. [Emphasis added.]

"You are further notified that our security interest in the farm products by the said producer will be waived by us *by your making all payments in consideration of your purchase of said farm products* jointly in the names of the said producer and Mercantile Bank, N.A. *Id,* pg. 2, TAB 3. [Emphasis added.]

Wells Fargo has admitted that this is the only notice sent, and that Alazan did not purchase the cotton. [*See,* judicial admission "Alazan was . . . not a purchaser of the collateral." (Wells Fargo's Response to Alazan's Motion for Summary Judgment, pg. 20, ¶47 [TAB 6]).

8.   Case law notes that the Food Security Act makes a clear distinction between a Seller's Agent and a "Purchaser." *See, e.g. AG Services of America, Inc. v. United Grain, Inc.,* 75 F.Supp.2d 1037 D.Neb.,1999. ["The statute distinguishes between a 'buyer,' a 'commission merchant' or a 'sales agent' for certain purposes. *Compare* 7 U.S.C. § 1631(e)(1) *with* 7 U.S.C. § 1631(g)(2)." *Id.* 1042]. Wells Fargo simply ignores this distinction as if non-existent even though the requirements of the notice provisions to buyers and to selling agents are separate and contained in separate sections of the statute.

9.   To overcome the fact that Wells Fargo did not send a "Seller's Agent" notice to Alazan [that is, comply with 7 U.S.C. § 1631(g), by giving a "seller's agent" instructions on how to close a third party sale that Alazan might negotiate on behalf of the Swanbergs] (Alazan never did that for the Swanbergs) Wells Fargo now argues that "substantial compliance" will save its lien even though it never mentioned the word "seller's agent" and failed to otherwise comply with the contents of a seller's agent notice. Wells Fargo judicially admits that "(Wells Fargo) was . . . required to notify *selling agents*. . ." under the Food Security Act. (Wells Fargo's Response to Alazan's Motion for Summary Judgment, pg. 23, ¶ 52, [TAB 6]).

10.　To avoid the burden created by the Congressional intent of the statute, Wells Fargo only partially discusses the requirements of a "seller's notice" under the Act – and wholly fails to account for the deficiencies in the notice it gave which were clearly required by the statute:

　　a.　Wells Fargo's notice letter did not furnish "an original or reproduced copy . . . (of the security agreement) to the purported selling agent as required by the statute; *Id.* § 1631(g)(2)(A)(i);

　　b.　Well Fargo's notice letter did not include the "social security number of the debtor or . . . the IRS taxpayer identification number of the debtor . . ." as required by the statute. *Id.* § 1631(g)(2)(A) (ii)(III);

　　c.　Wells Fargo's notice letter did not include "any payment obligations imposed on the *commission merchant or selling agent* by the secured party as conditions for waiver or release of the security interest; . . . " as required by the statute. *Id.* § 1631(g)(2)(A)(V). [Emphasis added]. It is this critically important provision where Wells Fargo, if it had given a proper notice and if Alazan had been a selling agent, could have dictated that payment be made before the crop was delivered.

*Wells Fargo notifies Alazan only as a "purchaser" and instructs only if Alazan "purchases,"* yet Wells Fargo argues that "substantial compliance" will somehow salvage its lien claim against not a purchaser, but a purported "selling agent" (assuming Alazan was a selling agent, which it was not).

11.　Construction of the Food Security Act has been the subject of Federal Case law not mentioned by Wells Fargo. In *U.S. v. Bodine Produce Co.* 206 F.Supp. 201 D.C.Ariz.

1962, constructing the Food Security Act (as it related to adulterated foods, not liens) the District Court noted:

> It is an elementary rule 'that exceptions from a general policy which a law embodies should be *strictly construed, that is, should be so interpreted as not to destroy the remedial processes intended to be accomplished by the enactment.*' ***Spokane & Inland Empire Railroad Co. v. United States***, 1916, 241 U.S. 344, 350, 36 S.Ct. 668, 60 L.Ed. 1037; ***McCauley v. Makah Indian Tribe***, 9 Cir., 1942, 128 F.2d 867, 869-870. ***'One claiming the benefit of an exemption from a statute of general application has the burden of bringing himself clearly within it.'*** (citing ***Walling v. Reid***, 8 Cir., 1943, 139 F.2d 323, 327)." *Id.* at 211. [Emphasis added.]

The Food Security Act was enacted to eliminate an exception found in state laws:

> "''Congress has specifically attempted to alleviate the burden on and obstruction to interstate commerce in farm products through the Food Security Act, 7 U.S.C. § 1631. The provisions of this statute became effective December 23, 1986.' ***FDIC v. Bowles Livestock Comm'n Co.***, 739 F.Supp. 1364, 1375 (D.Neb.1990) ,*rev'd on other grounds,* 937 F.2d 1350 (8th Cir.1991). The Act includes § 1324 "which statutorily abrogates the widely enacted 'farm products' exception of § 9-307(1) of the Uniform Commercial Code." ***Lisco State Bank v. McCombs Ranches, Inc.***, 752 F.Supp. 329, 333 (D.Neb. 1990)." ***In re Julien Co.***, 141 B.R. 384, 388 (Bkrtcy.W.D.Tenn,1992).

As noted above, the Act specifically provides that a buyer shall take free of a security interest created by the seller "even though the security interest is perfected; and the buyer knows of the existence of such interest." 7 U.S.C. § 1631(d), unless the lender can show the exception -- strict compliance with the notice requirement. This section [1631(d)] wholly negates an argument that the giving of a deficient "notice" (*i.e.*, one that need only partially comply with the requirements of the statute) will impose liability on a purchaser or selling agent because they were on notice of the existence of a lien. By statute, mere notice of the security interest is insufficient to charge a purchaser with liability for a lien unless the statute is strictly complied with. Thus, a notice that simply gives notice of the lien, but fails to comply with almost every other section of the statute,

is dealt with under § 1632(d) – the purchaser or selling agent is not liable even if the purchaser has "notice" of the lien.

12. If the purchaser has received the statutorily defined "notice" – (*i.e.*, one containing all the facts) by which the lender complies with the statute, then the lien will survive as against that purchaser. In *Lisco State Bank v. McCombs Ranches, Inc.,* 752 F.Supp. 329, 336 (D.Neb.1990), the United States District Court held that a bank failed to meet the notice requirements of either the central filing system or the direct notice method for its security interest in cattle, even though the purchaser was informed at the time of the sale that the bank had a lien against the cattle. The court noted that "the 'direct notice' provisions of the FSA [do] not contain the 'substantial compliance' language included in the definition of the EFS. Compliance ". . . with the precise terms of the Act is required." *Id.* 752 F.Supp. at 339 n. 6. The *Lisco* case goes to lengths to discuss the legislative intent and the burdens placed on the lenders to maintain its liens:

> "It is apparent that Congress intended by the FSA to shift the potential burden of loss in cases of the sale of farm products to the lenders who finance farm operations, rather than have that burden imposed upon buyers, thus inhibiting interstate commerce. If Congress has cast its net too broadly in the FSA, at least in some circumstances, the proper remedy is in legislative amendment, not strained construction by the judiciary." *Id.* at 334.
> . . . .
> Although the result in this case seems harsh given that the defendant/buyer received oral notice of the plaintiff's security interest, it is clearly a result intended by the drafters of the FSA. The intentional deletion of the time-worn "good faith and with knowledge" U.C.C. language from the FSA definition of "buyer in the ordinary course of business" clearly implies that a buyer may take free of a security interest even if he or she is aware that the sale is in violation of a security interest. *Id.* at 340.

13. "Notice" of a lien does not bind a purchaser or selling agent by operation of the statute – only full compliance with the statue will do so. In this case Wells Fargo did not even come close to compliance, omitting most of the important requirements, including (i) notifying

---

Alazan as a "purchaser" and never mentioning that they really meant "selling agent" (ii) failing to include a copy of the security agreement with the notice; (iii) failing to furnish the debtor's tax ID; and (iv) failing to give payment instructions to a selling agent (Wells Fargo gave instructions only to a "purchaser" which Alazan was not) on how to proceed with a "sale" (not a purchase). In fact, Wells Fargo had among it's loan forms a proper selling agent notice, but elected to use the purchaser notice only.

14. The only case Wells Fargo could find to support its position was a "minor omissions" case out of the state court of Kansas construing federal law. That case actually held:

> "Congress passed the Act to shift the potential burden of loss in sales of farm products to lenders who finance farm operations, rather than have that burden imposed upon buyers who purchase farm products in the ordinary course of business. The Act provides:
>> "Except as provided in subsection (e) of this section and notwithstanding any other provision of Federal, State, or local law, a buyer who in the ordinary course of business buys a farm product from a seller engaged in farming operations shall take free of a security interest created by the seller, even though the security interest is perfected; *and the buyer knows of the existence of such interest.*" 7 U.S.C. § 1631(d)."
>
> ***First Nat' Bank & Trust v. Miami County Coop Ass'n***, 897 F.2d 144 (1995), at 1000. [Emphasis added.]
> ...
> It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. ***City of Wichita v. 200 South Broadway***, 253 Kan. 434, 436, 855 P.2d 956 (1993). See ***State v. Gonzales***, 255 Kan. 243, 248- 49, 874 P.2d 612 (1994)
>> Congress is presumed to intend that a statute be given a reasonable construction, so as to avoid unreasonable or absurd results. See ***Todd v. Kelly***, 251 Kan. 512, 520, 837 P.2d 381 (1992). *Id.* at 1001
>> Congressional intention is to be determined from a general consideration of the entire act. *Id.* at 1001

The Kansas state court simply ignored the statutory mandate that "knowledge of the existence" of the security interest does not continue the lien, and held that "substantial compliance" was

intended by this Federal Statute when dealing with only "minor omissions."[1] As noted above, the Federal Court's disagree. *See, also* **First Bank v. Eastern Livestock Co.** 837 F.Supp. 792 (S.D.Miss.,1993) citing *Lisco State Bank v. McCombs* with approval).

15. The best known commentators on the UCC and its interrelation to the Food Security Act would necessarily agree that Wells Fargo is simply wrong:

> In the absence of such a federally blessed central filing system enacted by the state, [FN 7] the secured creditor can get protection against an ordinary course buyer only by giving that buyer notice of the creditor's interest in a form specified in the federal law. FN8 [reciting the statutory requirement].[2] *The notice is much more detailed than a UCC-1 for it requires information such as the debtor's social security number or taxpayer identification number, requires the identification of farm products by type, county, crop year, and amount. **Because of the detail required in the notice, it will be easy to fail to give proper notice**.* 4 *White & Summers*, Uniform Commercial Code § 33-14 (4th ed. 2004). [Emphasis added.]
>
> [FN7 -Even in states that create a central filing system, direct notice in accordance with the federal statute is sufficient by itself to protect a secured creditor. See *Lisco State Bank v. McCombs Ranches, Inc.,* 752 F.Supp. 329, 13 UCC2d 927 (D.Neb. 1990).]
> [FN 8 below]." 4 *White & Summers*, Uniform Commercial Code § 33-14 (4th ed.)

16. But even more important to this position, Wells Fargo did not "substantially comply"

---

[1] The Kansas case has no appellate history and has never been cited for this proposition.
[2] § 1631(e)(1) requires that:
(1) the secured party or seller gives written notice of the security interest to the buyer -- within one year before the sale of the farm products
-- and organized according to farm products
(2) the original or reproduced copy of the notice must contain the same information as an "effective financing statement" as defined by the Act (1631(c)(4)(D)):
-- the name and address of the secured party and the debtor
-- the social security number, or the IRS taxpayer identification number, of the debtor
-- a description of the farm products including the amount, crop year, county or parish, and a reasonable description of the property
(3) the notice "must be amended in writing, within three months, similarly signed and transmitted, to reflect material changes"
(4) the notice will "lapse on either the expiration period of the statement or the transmission of a statement signed by the secured party that the notice has lapsed, whichever occurs first"
(5) the notice must state "any payment obligations imposed on the buyer by the secured party as conditions of waiver or release of the security interest."

---

with the statute in any event. The omissions were far from "minor errors." Almost everything required by the statute was missing from the "purchaser's notice" which was actually given. This Honorable Court cannot overlook all the omissions in the statutorily mandated notice as carefully set forth by Congress for the reasons declared by it in writing the statute: to protect commerce in general and purchasers in particular, not lenders.

### B. "Selling Agent" Status

17. Wells Fargo never plead selling agent and never mentioned such a theory until long after the deadline for pleadings amendments. Wells Fargo has never requested a right to amend its pleadings to state an agency claim. This issue was raised by Wells Fargo to defeat Alazan's first Motion for Summary Judgment. When Honorable Judge Isgur, the prior Bankruptcy Judge, reviewed the files he ordered the parties to file summary judgments on the issue of "selling agent," including the lack of pleadings. Because the reference was withdrawn just after filing these Motions and Replies, the motions are pending before this Honorable District Court.

18. Wells Fargo simply repeats its prior arguments raised only in a responsive pleading to Alazan's original motion for summary judgment (and not raised in any live pleading to date) and in reply to Alazan's Second Motion for Summary Judgment that Alazan was not a "selling agent." There is no evidence that under the Food Security Act definition of selling agent that Alazan could ever be considered in such status.

19. As noted in Alazan's second Motion for Summary Judgment, because the opposing party's evidence must meet the quantum of proof required at trial [*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2512-13 (1986)], Wells Fargo's proposition that Alazan was the selling agent in the Swanberg's sale to Geo. Bennett Co. fails as a matter of law. Those arguments will not be repeated here.

C.  **The Nature of the Contract: Bailment, not Agency**

   (i)  **The Dealings:**

20.  The business dealings between Alazan and Swanberg Farms were oral, established through eleven years of consistent dealings. Their agreement required the taking of physical possession of cotton by Alazan for ginning, marking the cotton for identification acceptable to a federally licensed storage facility, taking samples for classification, and delivery of the physical, tagged and graded cotton bales to a compress (storage warehouse facility owned by unrelated third parties). The agreement had additional terms, some arising by implication through practice. After delivery of the actual cotton to the warehouse, the tag numbers were registered by the warehouse, and with the agreement of the farmer, and actually for his convenience, these warehouse receipts (electronic warehouse receipts ["EWRs"]) were issued by the warehouse in the name of the gin, such that the gin had record legal title while the farmer had equitable title but the absolute right to direct and control what actually happened to the EWRs.

21.  As Alazan held only record title with no rights of independent disposition and Swanberg Farms held equitable title, the resulting relationship was a bailment. It was a bailment for the mutual benefit of Alazan and Swanberg Farms. Wells Fargo was not a party to the oral contractual relationship. Only Wells Fargo claims that the relationship was that of agency.

   (ii)  **Contract vs. Tort:**

22.  This suit is a breach of contract suit and is not founded in tort, nor is there any tort claim at issue in this case. *See, e.g.* ***Southwestern Bell Telephone Co v. Delaney***, 809 S.W.2d 493 (Tex. 1991) ["when the only loss or damage is the subject matter of the contract, the plaintiff's action is ordinarily on contract (citations omitted) *Id.* at 494]. *See, also,* ***Prime***

*Products, Inc. v. S.S.I. Plastics, Inc.* 97 S.W.2d 631 (Tex. Civ. App.—Houston [1st Dist.] 2002, writ ref'd n.r.e.).[3] A breach of a contract is not a tort. *Southern Union Company vs. City of Edinberg*, 129 S.W.3d 74 (Tex. 2003). Breach of a bailment contract therefore, is not a tort, but is therefore, a breach of contract. *Southwestern Bell, Id* at 495. As held in *Southwestern Bell*, "Bell's duty to publish Delanney's advertisement arose solely from the contract . . . damages, lost profits, were only for the economic loss caused by Bell's failure to perform" (*Id.* at 495). Likewise in the case at bar, whatever duties exist in this case arose from the contract for Alazan to hold the EWRs and deliver them at the direction of Swanberg.

### (iii) The Bailment Contract:

23. ***Prime Products*** is a very similar case involving a bailment. There the bailment is also based on an oral contract. The case sets out the elements of a bailment:

(1) delivery of personal property from one person to another for a specific purpose;

(2) acceptance by the transferee of such delivery;

(3) agreement that purpose will be fulfilled;

(4) understanding that property will be returned to transferor (or as directed by transferor). *Id.* at 635.

24. ***Prime Products, Inc.*** recognizes that a bailment does not create a fiduciary relationship,[4] nor does it give rise to a duty of "good faith and fair dealings."[5] Wells Fargo, on the other hand, attempts to construct an "agency" relationship to artificially position itself as the proponent of a more favorable (to it), but completely inapplicable legal theory (without

---

[3] *Prime Products*, holding that a breach of a bailment contract and does not give rise to tort duties (without an independent tort being committed), notes that the idea of the existence of a duty (upon which a tort is based) is exclusively the province of the court – the non-existence of such "duty" upon which a tort may be based ends the inquiry into whether negligence may be imposed. *Id.* at 635.
[4] *Id.* at 637-638.
[5] *Id.* at 638, *citing Formosa Plastics Corp, USA v. Presidio Engineers & Contractors, Inc.* 960 S.W.2d 41, 52 (Tex. 1998).

pleadings or facts to support this claim). In this case, there is no duty independent of the oral contract of bailment.

25. ***Prime Products*** also recognizes the rule that a "bailee for hire" is not made an "insurer by implication"; that for the loss to the bailed property caused by others to be the responsibility of the bailee there must have been a specific agreement by the parties that this would be the case. *Id.* at 636.

26. The facts are clear that in this contract case it is the "timing" of the re-delivery of the EWRs that is the only criticism of Alazan. No party complains that Alazan did not properly gin the cotton; that Alazan did not properly safeguard the EWRs while in its possession; that Alazan did not abide by the instructions of Swanberg Farms by re-delivery to the wrong person; that the delivery itself was not pursuant to a valid offer and acceptance which would require delivery of the EWRs at some point; or that the delivery was refused altogether by Alazan. All parties complain only that the delivery was too early; that is, that Alazan should not have delivered the EWRs until payment was in hand.

27. It is admitted by all parties that the issue of "when" the EWRs were to be delivered after Swanberg Farms notified Alazan that it had sold its cotton was never discussed, and it certainly was not an express term of any oral or written agreement or instruction between Alazan and Swanberg Farms, nor was it the subject of the written Food Security Act notice letter between Alazan and Wells Fargo. Because this is a suit on an oral contract (that is, as between Alazan and Swanberg Farms) "only the parties' objective manifestations of intent may be considered" by a jury. *See, e.g.* ***Admas v. Petrade International, Inc.***, 754 S.W.2d 696, 717 (Tex. Civ. App.—Houston [1st Dist] 1988, writ denied); ***Slade v. Phelps***, 446 S.W.2d 931, 933 (Tex. Civ. App.—Tyler, 1969, no writ). As to the timing of the delivery, it is undisputed that

there was never an objective manifestation of intent by some oral discussion or instruction. This rule, however, does not exclude terms implied by the parties' "earlier course of dealings." *See, eg.* ***Haws & Garrett General Contractors, Inc. v. Gorbett Bros. Welding Co***. 480 S.W.2d 607, 609 (Tex. 1972); ***Calvin v. Koltermann, Inc. v. Underream Piling Co.,*** 563 S.W.2d 950, 956 (Tex.Civ. App.—San Antonio, 1977, writ ref'd n.r.e.).  There are eleven years of "earlier course of dealings" in this case, and in each prior year Alazan did exactly what it did in 1998 with respect to the timing of the delivery of the cotton warehouse receipts of this farmer.

### III.
### CONCLUSION

Alazan is entitled to summary judgment as requested in its Second Motion for Summary Judgment, that Wells Fargo has no suit maintainable against Alazan, and the Swanbergs have only a claim arising from an oral contract of bailment, the terms of which were established by eleven years of a standard course of dealings between the farmer and the gin which were consistent with the cotton industry in the Rio Grande Valley. Alazan prays for such other and further relief at law and in equity as may be just.

Respectfully submitted,

Shelby A. Jordan
State Bar No. 11016700
Adm. No. 2195
Harlin C. Womble, Jr.
State Bar No. 21880300
Adm. No. 8959
***Jordan, Hyden, Womble & Culbreth***
500 North Shoreline Blvd., Suite 900
Corpus Christi, Texas 78471
Telephone:  (361) 884-5678
Telecopier: (361) 888-5555

**ATTORNEY FOR DEFENDANT,
ALAZAN GIN CO.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served on the following parties by facsimile and First Class United States Mail, postage prepaid, on this the 28th day of May, 2004.

Rex N. Leach
ATLAS & HALL, L.L.P.
P.O. Box 3725
McAllen, Texas 78502-3725
**Via Fax: (956) 686-6109**


Marshall R. Ray
RANSOME AND RAY, P.C.
550 E. Levee Street
Brownsville, Texas 78520-5243
**Via Fax: (956) 542-3698**

_____
Shelby Jordan