

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 0 1 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| SWANBERG FARMS | § | C.A. B-04-083 |
| | § | |
| VS. | § | (Adversary |
| | § | No. 02-07012) |
| CHUCK CROWLEY, d/b/a | § | |
| GEORGE D. BENNETT & CO., INC. | § | A JURY IS DEMANDED |

**ALAZAN GIN COMPANY'S PROPOSED JURY QUESTIONS AND INSTRUCTIONS**

TO THE UNITED STATES DISTRICT JUDGE:

ALAZAN GIN COMPANY, a Defendant in the above referenced proceeding (herein "Alazan"), files these proposed Jury Questions and Instructions, supported by authorities, as follows:

## I.
## PRELIMINARY STATEMENT

1. Alazan requests that the instruction set out in the Texas Pattern Jury Charges apply in this case with respect to the State law issues.

2. This is a contract suit. Alazan requests instructions on the issues of the terms of the agreement between Alazan Gin and Swanberg Farms.

## II.
## ALAZAN'S REQUESTED ISSUES AND INSTRUCTIONS

3. Alazan requests that the court instruct and charge the jury with the following instructions and questions:

4. The following terms shall have the following meanings.

    a. "Swanberg Farms" means the Plaintiff, Swanberg Farms Partnership

    b. "Wells Fargo" means the Plaintiff, Wells Fargo Bank Texas, N.A.

    c. "Alazan" means the Defendant, Alazan Gin Co.

  d. "George D. Bennett & Co." means George D. Bennett & Co., Inc.

  e. "Warehouse Receipts" means the electronic warehouse receipts for 1521 bales of cotton farmed by Swanberg Farms in 1998 and sold to George D. Bennett & Co.

  f. "Chuck Crowley" means Charles Crowley, owner and representative of George D. Bennett & Company

## JURY QUESTIONS

**QUESTION #1:** Do you find from the preponderance of the evidence that Alazan and Swanberg Farms reached an agreement that authorized Alazan to send the Swanberg Farms warehouse receipts to George D. Bennet & Co. on September 16, 1998, prior to receiving payment therefore?

**INSTRUCTIONS REGARDING QUESTIONS # 1:** (Ref. PJC 101.3 Instruction on Formation of Agreement)

"In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealings. You may not consider the parties' unexpressed thoughts or intentions."

You are also instructed that if you find that a trade, custom, or industry practice existed in the cotton business in the Rio Grande Valley in 1998, you may consider it in determining the parties' contractual intent with respect to the when the warehouse receipts were to be delivered by Alazan to George D. Bennett & Co."[1]

---

[1] "Evidence of custom may be admitted [PJC 101.9]. "If the jury finds that the custom existed, it could be considered by the jury toward determining the parties contractual intent." Lambert vs. H. Molsen & Co, 551 S.W.2d 151 (Tex. Civ. 1977).
"Evidence of custom may be admitted to aid in the interpretation of a contract if the contract is . . . incomplete . . . or inconsistent. . . ." Miller vs. Gray, 149 S.W.2d 582 (Tex. 1941); Energen Resources MAQ, Inc,. v. Dalbosco, 23 S.W.3d 551 (Tex. Civ. App.- Houston [1st Dist] 2000); PGP Gas Products, Inc. vs. Reserve Equipment Inc., 667 S.W.2d 604 (Tex. Civ. App. – Austin 1984). [1]

**ANSWER:** "Yes" [Alazan and Swanberg Farms did reach an agreement that permitted Alazan to send the warehouse receipts on September 16, 1998 prior to receiving payment therefore]; or "No" [they did not reach an agreement that permitted Alazan to send the warehouse receipts on September 16, 1998 prior to receiving payment therefore].

**ANWWER:**   [Yes or No] _____

If you have answered Question No. 1 "Yes", then do NOT answer Question #2 and go to Question # 4.

If you have answered Question # 1 "No", then answer Question #2.

**In rendering your verdict you will consider the following definitions and instructions:**

1.   **Negligence and Ordinary Care   [PJC 2.1]**

"Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

2.   **Proximate Cause   [PJC 2.4]**

"Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using *ordinary care* would have foreseen that the event, or some similar event, might reasonably result there from. There may be more than one proximate cause of an event.

3.   **Sole Proximate Cause   [PJC 3.2]**

There may be more than one proximate cause of an event, but if an act or omission of any person not a party to the suit was the "sole proximate cause" of an occurrence, then no act or omission of any other person could have been a proximate cause.

**QUESTION NO. 2:**

Did the negligence, if any, of those named below proximately cause the occurrence in question?

Answer "Yes" or "No" for each of the following:

    a.    Alazan    _____

    b.    Swanberg Farms    _____

    c.    Wells Fargo    _____

    d.    George D. Bennett & Company    _____

    e.    Chuck Crowley    _____

**QUESTION 3:**    (Proportionate Responsibility [Ref. PJC 4.3])

If you have answered "Yes" to Question 2 for more than one of those named below, then answer the following question. Otherwise, do not answer the following question. The percentages you find must total 100 percent. The percentages must be expressed in whole numbers. The negligence attributable to any one named below is not necessarily measured by the number of acts or omissions found. The percentage attributable to any one need not be the same percentage attributed to that bone in answering another question.

What percentage of the negligence that caused the occurrence do you find to be attributable to each of those listed below and found by you in your answer to Question 2 to have been negligent?

    a.    Alazan    _____%

    b.    Swanberg Farms    _____%

    c.    Wells Fargo    _____%

    d.    George D. Bennett & Company    _____%

    e.    Chuck Crowley    _____%

    **Total**    _____100_____%

**QUESTION # 5:** Damages [Ref. PJC 110.2]

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Swanberg Farms for its damages, if any, that resulted from such negligence?
Consider the following elements of damages, if any, and none other.

Do not add any amount for interest on damages, if any.

Answer in dollars and cents.

ANSWER: $_____

5. For pre-trial purposes, Alazan argues that the following issue on "Selling Agent" will not be submitted unless:

(i) the issue has found that the cause of action was properly and timely plead; and

(ii) the Court finds, as a matter of law, (this is not a jury issue) that Wells Fargo Bank provided Alazan Gin with a sufficient notice as a "selling agent" in 1998 prior to the delivery of the warehouse receipts to George D. Bennett & Co.

6. If the Court finds that the notice given was sufficient to bind a "seller's agent" under the Food Act, then this question will be submitted. Otherwise, it will not.

**QUESTION #6 Selling Agent**

Do you find from a preponderance of the evidence that Alazan was the "selling agent" of Swanberg Farms in the 1998 transaction and sale to George Bennett & Co.

INSTRUCTION: You are instructed that, in answering Question #6, the term "selling agent" means any person, other than a commission merchant, who is engaged in the business of negotiating the sale and purchase of any farm product on behalf of a person engaged in farming operations. You are instructed that the term "commission merchant" means any person engaged in the business of receiving any far product for sale, on commission, or for or on behalf of another person.

Answer **"Yes"** [Alazan was the selling agent of Swanberg Farms]; or **"No."** [Alazan was not the selling agent of Swanberg Farms].

ANSWER: ["Yes" or "No"]_____.

### III.
### ARGUMENTS AND AUTHORITIES

7. The following arguments and authorities incorporate herein by reference the submissions previously made on the issue of "selling agent" which shall not be repeated below.

**A. The Nature of the Suit: Bailment Contract or Statutory Agent.**

**(i) The Dealings:**

8. The business dealings between Alazan Gin and Swanberg Farms were oral, established through 11 years of consistent dealings. The agreement required taking possession of physical cotton for ginning, marking the cotton for identification acceptable to a federally licensed storage facility, taking samples for classification, and delivery of the physical, tagged and graded cotton to a compress (storage warehouse facility owned by unrelated third parties). The agreement had additional terms. After delivery of the physical cotton to the warehouse, the tag numbers were registered by the warehouse, at the agreement of the farmer, these warehouse receipts, or electronic warehouse receipts ("EWRs) were issued by the warehouse in the name of the gin, such that the gin had record legal title while the farmer had equitable title and directed and controlled what actually happened to the EWRs.

9. As Alazan held only legal title with no rights of independent disposition and Swanberg Farms equitable title, the resulting relationship, (in this case, the relationship that the parties to that agreement both call a "bailment" for "mutual benefit") was a bailment. Only Wells Fargo, not a party to the oral contractual relationship, claims that the relationship was that of agency.

**(ii) Contract vs. Tort:**

10. First of all, this suit is a breach of contract suit and is not founded in tort nor is there any tort claim at issue in this case. *See, e.g.* ***Southwestern Bell Telephone Co v. Delaney***,

809 S.W.2d 493 (Tex. 1991) ["when the only loss or damage is the subject matter of the contract, the plaintiff's action is ordinarily on contract (citations omitted) Id. at 494]. *See, also, **Prime Products, Inc. v. S.S.I. Plastics, Inc**.* 97 S.W.2d 631 (Tex. Civ. App.—Houston [1st Dist.] 2002, writ ref'dn.r.e.).[2] The breach of a contract is not a tort. ***Southern Union Company vs. City of Edinberg***, 129 S.W.3d 74 (Tex. 2003). Breach of a bailment agreement thus, is not a tort, but a breach of contract. ***Southwestern Bell, Id*** at 495. As held in ***Southwestern Bell***, "Bell's duty to publish Delanney's advertisement arose solely from the contract . . . damages, lost profits, were only for the economic loss caused by Bell's failure to perform" (***Id***. at 495) just as here every duty arose from the contract to hold the EWRs and deliver at the direction of the farmer.

### (iii) The Terms: Objective manifestations of intent only:

11. And it is admitted by all parties that the issue of "when" the EWRs were to be delivered after Swanberg Farms notified Alazan that it had sold its cotton, was never discussed and was not an express term of any oral or written agreement or instruction between Alazan and Swanberg Farms, nor the subject of the written notice letter agreement between Alazan and Wells Fargo. Because this is a suit on an oral contract (that is, as between Alazan and Swanberg Farms) "only the parties objective manifestations of intent may be considered" by a jury. *See, e.g.* ***Admas v. Petrade International, Inc.***, 754 S.W.2d 696, 717 (Tex. Civ. App.—Houston [1st Dist] 1988, writ denied); ***Slade v. Phelps***, 446 S.W.2d 931, 933 (Tex. Civ. App.—Tyler, 1969, no writ). As to the timing of the delivery, it is undisputed that there was never an objective manifestation of intent by some oral discussion or instruction. This rule, however, does not exclude terms implied by the parties "earlier course of dealings." *See, eg.* ***Haws & Garrett***

---

[2] ***Prime Products***, holding that a breach of a bailment contract and does not give rise to tort duties (without an independent tort being committed), notes that the idea of the existence of a duty (upon which a tort is based) is exclusively the province of the court – the non-existence of such "duty" upon which a tort may be based ends the inquiry into whether negligence may be imposed. ***Id***. at 635.

*General Contractors, Inc. v. Gorbett Bros. Welding Co*. 480 S.W.2d 607, 609 (Tex. 1972); *Calvin v. Koltermann, Inc. v. Underream Piling Co.,* 563 S.W.2d 950, 956 (Tex.Civ. App.—San Antonio, 1977, writ ref'd n.r.e.). There are 11 years of "earlier course of dealings" in this case, and each prior year Alazan Gin did exactly what it did in 1998 in respect to the timing of the delivery of the EWRs (or previously, the WRs).

### (iv)   The Bailment Contract:

12.   ***Prime Products*** is a very similar case involving a bailment, involving an oral bailment contract. The case sets out the elements of a bailment

(1)   delivery of personal property form one person to another for a specific purpose;

(2)   acceptance by the transferee of such delivery;

(3)   agreement that purpose will be fulfilled;

(4)   understanding that property will be returned to transferor (or as directed by transferor). *Id*. at 635.

13.   ***Prime Products, Inc.*** recognizes that a bailment does not create either a fiduciary relationship[3], nor does it give rise to a duty of "good faith and fair dealings."[4] Wells Fargo, on the other hand, attempts to construct an "agency" relationship to overcome its burden of proof (without pleadings or facts to support this claim). In this case, there is no duty independent of the oral contract of bailment.

14.   ***Prime Products*** also recognizes the rule that a "bailee for hire" is not made an "insurer by implication" and there must be specific contractual agreements that losses to the bailed property caused by others were to be the responsibility of the bailee. *Id.* at 636.

15.   The facts are clear that in this contract case, it is the "timing" of the re-delivery of

---

[3]   Id. at 637-638.
[4]   Id. at 638, *citing Formosa Plastics Corp, USA v. Presidio Engineers & Contractors, Inc.* 960 S.W.2d 41, 52 (Tex. 1998).

the EWRs that is the only criticism of Alazan Gin. No party complains that Alazan did not property gin the cotton; that Alazan did not properly safeguard the EWRs while in their possession; that Alazan did not abide by the instructions or Swanbrerg Farms by were delivery to the wrong person; or that the delivery itself was not pursuant to a valid offer and acceptance which would require delivery of the EWRs at some point; or that the delivery was refused by Alazan. All parties only complain that the delivery was too early; that is, that Alazan should not have delivered the EWRs until payment was in hand.

Respectfully submitted,

_____
Shelby A. Jordan
State Bar No. 11016700
Adm. No. 2195
Harlin C. Womble, Jr.
State Bar No. 21880300
Adm. No. 8959
***Jordan, Hyden, Womble & Culbreth***
500 North Shoreline Blvd., Suite 900
Corpus Christi, Texas 78471
Telephone: (361) 884-5678
Telecopier: (361) 888-5555

**ATTORNEY FOR DEFENDANT,
ALAZAN GIN CO.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served on the following parties by facsimile and by First Class United States Mail, postage prepaid, on this the 1st day of June, 2004.

Rex N. Leach
ATLAS & HALL, L.L.P.
P.O. Box 3725
McAllen, Texas 78502-3725
**Via Fax: (956) 686-6109**

Marshall R. Ray
RANSOME AND RAY, P.C.
550 E. Levee Street
Brownsville, Texas 78520-5243
**Via Fax: (956) 542-3698**

_____
Shelby A. Jordan

Case 1:04-cv-00083    Document 15    Filed in TXSD on 06/01/2004    Page 10 of 10