21

United States District Court
Southern District of Texas
FILED

JUN 1 4 2004

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| SWANBERG FARMS | § | C.A. B-04-083 |
| | § | |
| VS. | § | (Adversary |
| | § | No. 02-07012) |
| CHUCK CROWLEY, d/b/a | § | |
| GEORGE D. BENNETT & CO., INC. | § | A JURY IS DEMANDED |

## DEFENDANT'S OBJECTION TO TRIAL
## OF "SELLER'S AGENT" CLAIMS

Now comes Alazan Gin Company, Defendant, and prior to commencement of the testimony in this case, files and makes the following objections to the introduction of evidence on the issue of "seller's agent" as set out in 7 U.S.C.A. § 1623, as follows:

## I.
## RELIEF REQUESTED

1.      It is undisputed that prior to the close of discovery in this case, no allegation of Defendant's status as a statutory "seller's agent" existed in any pleading, motion, paper, or submission pled by either Plaintiff Wells Fargo or Cross-Plaintiff Swanberg Farms. In fact, Swanberg Farms (the purported principal of the now-alleged agency) has never alleged that Defendant was its "seller's agent."

2.      It is undisputed that the first pleading making any reference to agency or seller's agent under the Food Securities Act ("FSA") occurred after all pre-trial deadlines had expired, and only in response to Defendant's motion for summary judgment. After Wells Fargo raised this issue, Defendant sought to designate an expert witness on the issue after initial deadlines had expired (having expired *long before* Wells Fargo raised the new claim). Wells Fargo objected to the new expert designation and the Court denied Defendant the request to have such an expert.

1

However, the then presiding Bankruptcy Judge ordered the parties to file new motions for summary judgment on the issue of seller's agent (as to whether the issue was timely plead, and whether the issue was provable).    Defendant filed its motion for summary judgment, in part objecting to trial of this un-plead issue by implied consent.

      3.     Defendant has never had an opportunity to conduct any discovery on the un-pled issue of seller's agent and, in fact, will be deprived of due process as a result of: (i) no disclosure of this issue during the pre-trial discovery of this case;  (ii) having no pleading on file (other than briefs of the Plaintiff) describing the cause of action;  (iii) having no ability to know what evidence may be elicited on this issue and, accordingly, not knowing if the evidence being presented is an attempt to prove up agency.    These facts deprive Defendant of due process of law, and are substantially prejudicial to the defense of this case.    *See, e.g.* ***Triad Electric & Controls, Inc. v. Power Systems Engineering, Inc.,*** 117 F.3d 180, 194 (5th Cir.1997).[1]

      4.     To permit trial on the issue of "seller's agent" constitutes an unfair surprise and substantially prejudices Defendant.    Without discovery on the issue, and without expert testimony, Defendant will be substantially harmed by the trial of that issue for a number of reasons.    Defendant has objected to the insertion of this issue in this trial regarding every paper filed by Plaintiff asserting this issue, including the response to Defendant's Motion for Summary Judgment, Plaintiffs' second series of Motions for Summary Judgment, and the non-joint pre-trial statement filed by Plaintiffs gratuitously adding "seller's agent" as a issue. Defendant has objected to trial of this issue by implied consent at every stage of pre-trial.

---

[1]    In the absence of express consent, "trial of unpled issues by implied consent is not lightly to be inferred under Rule 15(b), [and] such inferences are to be viewed on a case-by-case basis and in light of the notice demands of procedural due process." ***Triad Electric,*** 117 F.3d at 193-94 (quoting ***Jimenez v. Tuna Vessel Grananda,*** 652 F.2d 415, 422 (5th Cir.1981)).

5.     It is an abuse of discretion to admit evidence on issues not timely and properly plead over the objection of the prejudiced party. *See*, **T.J. Stevenson & co., Inc. v. 81.193 Bags of Flour**, 629 F.2d 338, 370 (5th Cir. 1980); **Morgan and Culpepper, Inc. v. Occupational Safety and Health Review Commission**, 676 f.2d 1065, 1068 (5thCir. 1982); **Deere & Co v. Johnson**, 271 F.3d 613 (5thCir. 2001); **International Harvestor Credit Corp. v. East Coast Truck**, 547 F.2d 888 (5th Cir. 1977); **Mary S. Krech Trust v. Lakes Apartments**, 642 F.2d 98, 101 n.6. (5th Cir. 1981) [refusal to allow late pleading amendments]; **New Orleans Furniture Mfg. Co. v. Great Am. Ins. Co.**, 413 F.2d 1278 (5th Cir. 1959); **Kona Technology Corp. v. Southern Pac. Transportation Co.**, 225 F.3d 595 (5th Cir. 2000); **Burdis v. Texas & Pac. Ry. Co.**, 569 F.2d 320 (5th Cir. 1978).[2] Defendant seeks an order of this Court prohibiting any offer of proof on the issue of seller's agent.

## II.
### POSITION STATEMENT REGARDING
### DEFENDANT'S REQUEST FOR ALTERNATIVE RELIEF

6.     The Defendant seeks alternative relief in the event that it is put to trial on the issue of "seller's agent" under the Food Security Act ("FSA").   In support of this alternative relief, the following undisputed facts are relevant:

a.     The "Notice Letter" [Tab 1 Defendant's Ex. 1.09] relied upon by Wells Fargo is defective regardless to whom it is directed (that is, whether Plaintiff alleges it was a purchaser's notice as Plaintiff's pleadings allege or a seller's agent notice) as a matter of law.

---

[2]     *See, also*, **Thorn Emi N. America, Inc. v. Intel Corp.**, 936 F.Supp. 1186, D.C.Del.1996, *affirmed on other grounds*, 157 F.3d 887 (C.A.Fed.1998) [District court will prevent party from raising claim or defense at trial that was not adequately described in response to contention interrogatory]; **R.L. Clark Drilling Contractors, Inc. v. Schramm, Inc.**, 835 F.2d 1306.(10th Cir 1987);

3

b.     The "Notice Letter" is fatally defective under the Seller's Agent provisions of the FSA because Alazan was not a Seller's Agent in the Swanberg transaction.[3]

c.     Even if Alazan were a Selling Agent, no "payment obligations"[4] (were) imposed on (Alazan) . . . to be complied with other than the obligation to pay if Alazan purchased the cotton,[5] which Alazan did not.

d.     Even if the letter and the statute are read together in the most liberal terms, the only "payment obligations" arise if:

i.     there is a sale (the event triggering any payment obligation); and

ii.     there are proceeds of the sale; and

iii.     the farmer does not give the proceeds to the bank. [*See*, Ex.1.09]

---

[3]     "[T]he term selling agent means any person. . . who is engaged *in the business* of *negotiating the sale and purchase* of any farm product *on behalf of a person engaged in farming operations.* 7 U.S.C. §1631(c)(8). [Emphasis added]. There is no evidence that Alazan participated in any negotiations, much less regarding the buying and selling of the Swanberg Cotton to Crowley. This is undisputed.

[4]     The FSA requires that the statutory notice must set out "any payment obligations imposed on the . . . selling agent by the secured party as conditions for waiver or release of the security interest." 7 U.S.C. §1631 (g)(2)(A)(5).

The FSA creates a claim and cause of action *only if* "the . . . selling agent has failed to perform the payment obligations." 7 U.S.C. §1631 (g)(2)(B).

Otherwise, absent such a breach, ". . . notwithstanding any other provision of Federal, State, or local law, a . . . selling agent who sell, in the ordinary course of business, a farm product for others, shall not be subject to a security interest created by the seller in such farm product even though the security interest is perfected *and even though the commission merchant or selling agent knows of the existence of such interest.*" 7 U.S.C. §1631 (g)(1). [Emphasis added]

[5]     The Notice Letter Ex. 1.09 contains only the following language regarding any payment obligation:

"You are further notified that, ***should you purchase any of the said farm products of such producer***, you shall take such farm produces subject to the security interest created by him in the farm produces. Should the said producer fail to account to us for the proceeds of the sale of these farm products and fail to perform the payment obligations, then you shall be liable to Mercantile Bank, N.A. for conversion of such farm products. *Id*. pg. 1 TAB 3. [Emphasis added.]

"You are further notified that our security interest in the farm products by the said producer will be waived by us ***by your making all payments in consideration of your purchase of said farm products*** jointly in the names of the said producer and Mercantile Bank, N.A. *Id,* pg. 2 TAB 3. [Emphasis added.]   *Id,* pg. 1, 2, Defendant's Trial Exhibit 1.09.

7.    Alazan cannot be held responsible because proceeds never came into Alazan's hands to be a bailee and to comply with the payment obligations.

8.    The FSA does not make Alazan a guarantor of payment, only held accountable for proceeds Alazan has some control over.

## III.
## FIRST ALTERNATIVE RELIEF – ADEQUACY OF NOTICE IS NOT SUBMITTED TO THE JURY AND IS PRECLUSIVE

9.    Only in the event that this Court denies Defendant's Motion to exclude evidence of "seller's agent,"  Defendant requests that this Court first make its ruling as to whether the Plaintiff complied with the FSA "notice" requirements necessary to make a "seller's agent" liable for failure to comply with the "payment obligations" which must be set out in the FSA Notice.    If this Court finds, as it should, that there were no "payment obligations" set out in the notice,[6] or that there is no argument that the "payment obligations" set out in the notice were not breached, then the statute exempts (and pre-empts) Defendant from any liability.    Accordingly, no evidence of seller's agent would be relevant or admissible.

10.    Defendant seeks an order of this Court determining, as a matter of law (all relevant facts are admitted by the parties to be undisputed) that:  (i)   the FSA Notice did not contain "payment obligations" which Defendant breached;  and  (ii) the FSA provides that a "purchaser" or "seller's agent" has no liability for the sale or transfer of the cotton not in breach

---

[6]    The "payment obligation" in this case is conditioned upon "proceeds" being available either to the noticed party (Alazan) or the farmer (Swanberg Farms).   Because no "proceeds" came into existence, it is impossible to argue that Alazan failed to comply with the payment obligations (the only event under the Food Security Act giving rise to a claim by a lender).   See *McDonald v. Ocilla Cotton Warehouse, Inc. (In re McDonald)*, 224 B.R. 862 (Bankr. S.D. Ga. 1998) [absent proceeds the Court held that Ocilla legally could not convert Patterson Bank's proceeds by making these deductions. *Id.* at 868-69.

of any notice, even though the purchaser or seller's agent had actual knowledge of the lender's lien claim.[7]

## IV.
## SECOND ALTERNATIVE RELIEF
## SELLER'S AGENCY MUST BE IN THE SUBJECT TRANSACTION

11.    Only in the event that this Court finds that the FSA Notice complied with the statute and that there is evidence that Defendant failed to comply with the "payment obligations" of that Notice, then in that event,  Defendant requests that this Court require, as a predicate to the offer of any evidence of "seller's agent" that Plaintiff lay the evidentiary predicate to show that the Defendant was, in fact, a seller's agent *in the transaction involving the 1998 sale of Swanberg Farms cotton to Geo. Bennett & Co.,* (that is, that Defendant in fact negotiated the purchase and sale of the Swanberg Farms cotton on behalf of Swanberg Farms.  Defendant would have no liability to Plaintiff under the "seller's agent" provisions of the FSA if Defendant was not the Swanberg Farm's seller's agent *in the specific transaction*.   To hold otherwise is to suggest that a "seller' agent" may be held liable for transactions that it did not act as a seller's agent, an illogical and unsupportable position.  Were this true, every "seller's agent" (whether acting as such in a transaction) would be liable to every secured lender for every sale of which they were given notice even if they were not involved in the transaction covered by the notice.

---

[7]    The Food Security Act specifically makes "actual notice" of the lien, no matter how acquired, insufficient to establish a claim or protect the banks' lien:

> ". . . *notwithstanding any other provision of Federal, State, or local law,* [the preemption language] *a buyer who in the ordinary course of business buys a farm product from a seller engaged in farming operations* shall take free of a security interest created by the seller, even though the security interest is perfected;  and the buyer knows of the existence of such interest. (*citing* 7 U.S.C. § 1631(d))"  Id. at 795  [Emphasis added.]

This language emphasizes that giving notice of a lien is meaningless under the statute, without compliance with the other mandates of the notice provisions.

12.    Accordingly, Defendant seeks an order requiring Plaintiff to lay a proper evidentiary predicate that the Defendant Alazan was acting as a seller's agent in "negotiating the sale" of cotton "on behalf of" Swanberg Farms with Geo Bennett & Co., prior to admitting any other evidence of "agency" regarding other business or other transactions.

WHEREFORE, Defendant Alazan Gin Co., seeks the relief above requested prior to the commencement of testimony in this case, and for such other and further relief to which Defendant may be justly entitled, both at law and in equity.

Respectfully submitted,

Shelby A. Jordan
State Bar No. 11016700
Adm. No. 2195
*Jordan, Hyden, Womble & Culbreth*
500 North Shoreline Blvd., Suite 900
Corpus Christi, Texas 78471
Telephone:  (361) 884-5678
Telecopier:  (361) 888-5555

ATTORNEY FOR DEFENDANT,
ALAZAN GIN CO.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served on the following parties via facsimile, on this the 11th day of June, 2004 and by hand delivery on June 14, 2004.

Rex N. Leach
Vicki M. Skaggs
ATLAS & HALL, L.L.P.
P.O. Box 3725
McAllen, Texas 78502-3725


Marshall Ray
Elizabeth Guerrero
RANSOME AND RAY, P.C.
550 E. Levee Street
Brownsville, Texas 78520-5243

Shelby A. Jordan

8

*Loan # 85CCCC6-3@?*
*Swanberg Farms.*

# MERCANTILE

## BANK, N.A.

CERTIFIED MAIL
Z 166 990 912

February 17, 1998

WILLAMAR GIN CO., INC.
Attn: Gary White, Manager
Route 1, Box 270
Raymondville, TX  78580

RE:    Swanberg Farms
       Route 1, Box 130
       Lyford, TX  78569

> ALAZAN GIN EXHIBITS
> NO. **1.09**
> C.A. B-04-083 [6/14/04]  (Adv.02-07012)

### NOTICE OF SECURITY INTEREST IN COTTON/GIN

You are hereby notified that Mercantile Bank, N.A. whose address is
835 E. Levee, Brownsville, Texas 78520, claims a security interest
in the farm products of the above named producer, which have been
or may be grown by the producer for the 1998 crop year in Cameron
County, Texas, on the following described properties:   (See
attachment which is described by U.S.D.A.-ASCS farm numbers and
legal descriptions.)

The farm products subject to the claimed security interest consist
of cotton/grain.   This notice shall be amended in writing to
reflect any material changes within three months of such change.

This shall be effective for a period of one year from the date
hereof or until the transmission of notice signed by the above
secured party that the statement has lapsed, whichever occurs
first.

You are further notified that, should you purchase any of the said
farm products of such producer, you shall take such farm products
subject to the security interest created by him in the farm
products.   Should the said producer fail to account to us for the
proceeds of the sale of these farm products and fail to perform the
payment obligations, then you shall be liable to Mercantile Bank,
N.A. for conversion of such farm products.

030077

Member MERCANTILE FINANCIAL ENTERPRISES, INC. • P.O. Box 2219 • Brownsville, Texas 78522-2219 • (210) 546-2421

Member FDIC  200044  RECEIVED MAR 0 2 1998

Page 2
February 17, 1998
Willamar Gin Co., Inc.


You are further notified that our security interest in the farm products by the said producer will be waived by us by your making all payments in consideration of your purchase of said farm products jointly in the names of the said producer and Mercantile Bank, N.A.

Kindly acknowledge receipt and terms of this letter by executing your signature below and returning this letter to us in the enclosed self addressed envelope. Thank You.

Sincerely,

Brad Buchanan
Assistant Vice President

BB/ec

Enclosure


I hereby acknowledge the above lien and the conditions addressed concerning payee.

WILLAMAR GIN CO., INC.

By:

E H I B I T "A"
1-2

## SWANBERG FARMS, PTN.
## 1997-98 OPERATIONS

| FARM/LANDLORD | ACRES | RENT | COUNTY | ASCS # |
|---|---|---|---|---|
| Swanberg Farms, Ptn. | 49.2 | Own | Cameron | 0153 |
| Stone Bros. | 99.4 | 1/4 & 1/3 | Cameron | 7692 |
| Early-Blevins | 186.3 | 1/4 & 1/3 | Hidalgo | 1565 |
| Gustafson Estate | 699.7 | Cash | Hidalgo | .17378 |
| Vassberg Bros. | 710.1 | 1/4 & 1/3 | Willacy | 1951 |
| May Stafford | 51.7 | 1/4 & 1/3 | Willacy | 0174 |
| Marge Fisher | 187.7 | Cash | Willacy | 1198 |
| P & G Farms | 50 | 1/4 & 1/3 | Willacy | 1220 |
| Swanberg Farms, Ptn. | 184.8 | Own | Willacy | 1220 |
| Swanberg Farms, Ptn. | 82.7 | Own | Willacy | 1220 |
| Swanberg Farms, Ptn. | 53.4 | Own | Willacy | 0691 |
| Mike Fonseca | 16.3 | 1/4 & 1/3 | Willacy | 0691 |
| Jolene Gustafson, Inc. | 232 | 1/4 & 1/3 | Willacy | 2644 |
| Daniel Gustafson, Inc. | 563.8 | 1/4 & 1/3 | Willacy | 3400 |
| Clarice King | 25.4 | 1/4 & 1/3 | Willacy | 0725 |
| Alazan Gin Co. | 1585.5 | 1/4 & 1/3 | Willacy | 3502 |
| Alazan Gin Co. | 64.5 | 1/4 & 1/3 | Willacy | 2959 |
| Bethel Luth. Church | 9.6 | Cash | Willacy | 2886 |
| Daniel Oakes | 9.7 | Cash | Willacy | 3272 |
| Gumecindo Cavazos Est. | 144 | Cash | Willacy | 1176 |
| Refugia Garcia Estate | 58:2 | Cash | Willacy | 1329 |
| Leal Block | 36.9 | Cash | Willacy | 443 |
| Mary Lou Lazo | 18.7 | Cash | Willacy | 585 |

030079

200046

| | | | |
|---|---|---|---|
| Ofelia Hinojosa | 169.6 | 1/4 & 1/3 | Willacy | 2685 |
| Jolene Gustafson | 178 | 1/4 & 1/3 | Willacy | 2953 |
| Stone Bros. | 55 | 1/4 & 1/3 | Willacy | 731 |
| Stone Bros. | 120 | 1/4 & 1/3 | Willacy | 2957 |
| Tomas Garcia | 18.6 | Cash | Willacy | 557 |
| Joe M. Cavazos | 45.8 | Cash | Willacy | 3389 |
| Juan M. Garcia | 34.6 | Cash | Willacy | 3574 |
| Mike & Fred Garcia | 76.9 | Cash | Willacy | 3575 |
| Juan Garcia | 143.8 | Cash | Willacy | 3576 |
| Ricardo Mares | 43.1 | Cash | Willacy | 649 |
| Ricardo Mares | 3.9 | Cash | Willacy | 1182 |
| Gloria Gutierrez | .10.2 | cash | Willacy | 2681 |

030080